**Lavell FRIERSON, Petitioner— Appellant,**

v.

**Jeanne S. WOODFORD, Warden, of the California State Prison at San Quentin, Respondent—Appellee.**

No. 04–99002.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 2, 2006.

Decided Sept. 14, 2006.

courts of this circuit except as provided by 9th Cir. R. 36–3.

Knapp, Petersen & Clarke, Glendale, CA, Edward A. Rucker, Santa Monica, CA, for Petitioner-Appellant.

Steven D. Matthews, Los Angeles, CA, for Respondent-Appellee.

Before: B. FLETCHER, SILVERMAN, and PAEZ, Circuit Judges.

MEMORANDUM *

Lavell Frierson appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition challenging his California special circumstances findings and death penalty sentence for first degree felony murder in *People v. Frierson,* 53 Cal.3d 730, 280 Cal.Rptr. 440, 808 P.2d 1197, 1200 (1991) (*Frierson III* ). Concurrent with the filing of this memorandum, we filed an opinion addressing Frierson's penalty phase claims in *Frierson v. Woodford,* No. 04–99002 (opinion). This memorandum disposes of Frierson's special circumstances claims. Because the facts of this case are detailed in our opinion, we need not recite them here.

Frierson raises three claims of error in the special circumstances phase of the third trial: two ineffective assistance of counsel claims and one prosecutorial misconduct claim. As explained below, we conclude that Frierson has failed to prove that he was prejudiced by the deficiencies of his counsel or the prosecution's violation of his rights, thereby failing to establish that ineffective assistance of counsel, or that a violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), occurred. We therefore affirm the judgment of the district court denying Frierson habeas relief as to the special circumstances phase of the trial.

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir. R. 36–3.

## I. Ineffective Assistance of Counsel: Claim A(2)

Frierson asserts that he received ineffective assistance of counsel (IAC) during the special circumstances phase because his trial counsel, Arnold Lieman, failed to investigate, prepare, and present defense evidence as to Frierson's mental health.[1] Specifically, Frierson asserts that Lieman (1) failed to investigate and present psychopharmacological testimony to establish Frierson's history of chronic PCP abuse, and its effects; (2) failed to prepare Dr. Gillick as a witness; and (3) failed to investigate and present neuropsychological testimony to establish that Frierson had organic brain damage, and its effects.

To prevail on this claim, Frierson must show that (i) Lieman's performance was deficient, and (ii) this deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We turn first to the prejudice prong of the *Strickland* IAC analysis. *See id.* at 697, 104 S.Ct. 2052 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."); *Young v. Runnels,* 435 F.3d 1038, 1043 (9th Cir.2006). Frierson argues that prejudice exists, i.e., but for Lieman's errors in failing to investigate, prepare, and present the aforementioned evidence, there is a reasonable probability that the jury would not have found the special circumstances to be true. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *see also Summerlin v. Schriro,* 427 F.3d 623, 629 (9th Cir.2005). We disagree. In light of the strength of the prosecution's case, the weakness of Frierson's sole de-

1. Frierson's other special circumstances IAC claim, concerning Lieman's failure to investigate and impeach Walker, is discussed below. *See infra* Part II.

fense of diminished capacity, and the brevity of the jury's deliberations, we agree with the district court that Frierson has failed to establish *Strickland* prejudice.

The heart of Frierson's multi-part IAC claim is Lieman's failure to investigate and prepare psychopharmacological testimony that Frierson's chronic PCP abuse prevented him from forming the requisite mental state for the special circumstances, i.e., that he was unable to deliberate and premeditate. Rather than presenting the testimony of a psychiatrist and narcotics consultant, Dr. Gillick and Carl Trout, respectively, Frierson argues that Lieman should have presented testimony from a pyschopharmocologist, such as Dr. Siegel, who testified in Frierson's second trial, or Dr. Wilkins, who testified at the first evidentiary hearing in the district court.

In *People v. Frierson,* 39 Cal.3d 803, 218 Cal.Rptr. 73, 705 P.2d 396, 396–97 (1985) (*Frierson II* ), Dr. Siegel testified that, based on his examination of Frierson and review of Frierson's extensive drug history, he concluded that Frierson was a PCP abuser who was chronically intoxicated at the time he committed the murder. Unlike Dr. Gillick, however, Dr. Siegel declined to opine on Frierson's mental state at the time of the crime. Indeed, he testified at trial that he had "expressed no such opinion" whether Frierson's mental state was affected. Because Dr. Siegel's testimony regarding Frierson's mental state was not helpful,[2] it cannot be said that the failure to present him as a witness amounted to *Strickland* prejudice. Even if we were to conclude that Lieman was deficient in his review, or lack thereof, of Dr. Siegel's testimony in *Frierson II* and his 1980 written report, any such error

does not change the fact that Dr. Siegel could not opine on Frierson's mental state at the time of the killing, let alone opine on Frierson's ability to act in a manner consistent with the alleged special circumstances. Dr. Wilkins was also unable to testify that Frierson's impaired mental state prevented him from deliberating and premeditating, nor was he able to testify that Frierson was actually intoxicated.

Frierson did not show that a psychopharmacologist would have testified that his chronic PCP intoxication prevented him forming the requisite mental state, whereas Dr. Gillick so testified. Moreover, even if Lieman had presented favorable psychopharmacological testimony, such testimony would have been rebutted by the prosecution's own experts, and other evidence of the deliberate nature of the crime and Frierson's uncontested intent to rob the victims. Thus, we agree with the district court that Frierson has failed to establish that there is a reasonable probability that had Lieman presented testimony from a psychopharmacologist, rather than, or in conjunction with, Dr. Gillick and Trout, the outcome of the special circumstances phase would have been different.

█ Frierson also claims that Lieman was ineffective for failing to prepare Dr. Gillick as a witness and provide him with sufficient background information. As the district court noted, Lieman's preparation was inadequate. Indeed, the evidentiary record before the district court indicates that Lieman did not even read the transcripts of *Frierson II*. Nonetheless, Frierson did not suffer prejudice because the prosecution impeached Dr. Gillick, who testified that Frierson was unable to "de-

---

**2.** Although Dr. Siegel did not opine on Frierson's ability to form the intent to kill, he did conclude that, based on the surviving victim's testimony, Frierson was able to form the in-

tent to rob. He also conceded that Frierson appeared to have it "pretty well together" at the time of the crime.

liberate, premeditate and maturely and meaningfully reflect," with strong evidence of the goal-directed nature of Frierson's actions. We therefore cannot conclude that Lieman's preparation of Dr. Gillick "undermine[s] [our] confidence in the outcome" of the jury's special circumstances findings. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

■ We also reject the remaining subclaim regarding neuropsychological testimony. Despite Frierson's childhood head injuries, low IQ score, and the Turner Report's reference to minor symptoms of organic brain damage, none of the four doctors who examined Frierson as of the third trial suspected brain damage, or any other disability, that would have prevented Frierson from forming the requisite mental state. Again, although there is unsettling evidence that Lieman did not read the Turner Report or explore school records, Frierson failed to prove prejudice. Even if Lieman had conducted a more thorough investigation of Frierson's mental capacity, we cannot conclude from this record that he would have been able to present neuropsychological evidence that Frierson was unable to deliberate or premeditate, or act with the intent to kill. At the first evidentiary hearing in district court, Frierson presented the testimony of Dr. Froming, a neuropyschologist. Although Dr. Froming testified that Frierson suffered from organic brain damage, which affected him at the time he committed the

crime, her test methodology was wholly discredited. Therefore, the failure to present testimony similar to that presented by Dr. Froming at the evidentiary hearing did not undermine confidence in the special circumstances findings.[3]

In sum, despite evidence of Lieman's deficient performance in certain aspects of the special circumstances phase of the third trial, Frierson did not establish *Strickland* prejudice. As the district court noted in its order denying habeas relief for this and other claims, "[t]he strength of the prosecution's evidence of premeditation and deliberation, [and] the relative absence of evidence supporting the defense theory of diminished capacity, ... along with the brevity of the jury's deliberations all indicate that even if trial counsel had performed deficiently, it would not have affected the jury's determination." We therefore affirm the district court's judgment concerning this claim.

## II. Prosecutorial Misconduct and Related IAC: Claims D(2) & A(3)

Frierson also asserts that the prosecution committed a *Brady* violation during the special circumstances phase by failing to disclose impeachment evidence regarding its witness, Jimmy Lee Walker.[4] Frierson also claims that Lieman provided ineffective assistance of counsel because he failed to investigate Walker's criminal history and impeach Walker with evidence of

---

**3.** This is also true of the testimony of Dr. Matthews, who relied on Dr. Froming's neurological testing.

**4.** Embedded within his *Brady* claim, Frierson also suggests that a violation of *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), occurred when the prosecution failed to correct Walker's false testimony that he did not know that his pending burglary charges were dismissed. Like *Brady*, evidence is material for *Napue* purposes if

the State's use of, or failure to correct, false testimony undermines confidence in the trial outcome. *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir.2005) (en banc); *see also United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Because we find that Walker's testimony was not material within the meaning of *Brady*, we need not address separately the alleged *Napue* violation.

leniency granted in exchange for his testimony against Frierson. The district court granted summary judgment in favor of the prosecution on these two claims based solely on its determination that the impeachment evidence was not material. We agree.

Under *Brady*, the prosecution has an affirmative duty to disclose all material evidence, including impeachment evidence, favorable to the defendant. *Brady*, 373 U.S. at 87, 83 S.Ct. 1194; *Horton v. Mayle*, 408 F.3d 570, 578 (9th Cir.2005). A *Brady* violation occurs when the state suppresses, either wilfully or inadvertently, evidence, either explicit or implicit, that is favorable to the defendant and causes prejudice. *See Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Prejudice is tied to materiality; prejudice only occurs if the suppressed evidence is material. *Id.* Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). As in the case of an attorney's deficient performance underlying an IAC claim, the prosecution's non-disclosure must "undermine[ ] confidence in the outcome of the trial." (*Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (internal quotation marks omitted)); *Silva v. Brown*, 416 F.3d 980, 986 (9th Cir.2005). Because *Brady* materiality and *Strickland* prejudice are equivalent, *see Bagley*, 473 U.S. at 682–83, 105 S.Ct. 3375, Frierson must meet the same standard to prevail on each of his two claims concerning Walker.

Walker testified at Frierson's preliminary hearing, the guilt phases of *People v. Frierson*, 25 Cal.3d 142, 158 Cal.Rptr. 281, 599 P.2d 587 (1979) (*Frierson I* ) and *Frierson II*, and the special circumstances phase of *Frierson III*. In his appearances as a witness for the prosecution, Walker testified that Frierson recounted to him the details of the crime, confessing that he robbed and shot the two victims. Over the course of Walker's eight-year involvement with the case, he received numerous benefits from the prosecution, including grants of immunity and dropped charges. Although there was no explicit leniency agreement between Walker and the prosecution, Walker's pattern of testifying and receiving favorable treatment from the prosecution suggests that a mutual understanding, if not an implicit agreement, existed. Because, as the district court noted, Walker could have been impeached with evidence of the benefits he received—benefits that could have caused him to reasonably believe that his testimony and cooperation was a means by which he could obtain leniency in his own criminal matters—the prosecution should have disclosed this evidence.

█ Nonetheless, the prosecution's failure to disclose does not rise to the level of a due process violation because Walker's testimony was not material for the purposes of *Brady*. Although Walker received significant benefits, his testimony was not key. Rather, the physical evidence of the murder and damning testimony of the surviving victim were the critical components of the prosecution's success, and existed independent of Walker's testimony. Unlike other cases where we have found *Brady* materiality, Walker's testimony was not the "glue that held the prosecution's case together." *Horton*, 408 F.3d at 579. Therefore, we cannot say that there was a reasonable probability that, had the prosecution disclosed the Walker impeachment evidence, the jury's special circumstances findings would have been different.

█ With respect to Frierson's IAC claim, we agree with the district court that

158

Lieman performed deficiently. Lieman's copy of Walker's criminal history record was eight years old as of the trial in *Frierson I,* and therefore did not include any of Walker's criminal activity that occurred over the course of the three trials. Accordingly, Lieman was unaware of the recent crimes that Walker committed, and the lenient treatment that Walker received—information that would have been readily available had Lieman obtained a current criminal history report on Walker. However, because Walker's testimony was not material, Lieman's errors did not rise to the level of *Strickland* prejudice. In sum, although the prosecution should have disclosed evidence of the many benefits it granted Walker, and Lieman should have properly investigated and impeached Walker, these errors do not undermine our confidence in the outcome of the jury's special circumstances findings due to the strong evidence of the wilful, deliberate and premeditated nature of the murder committed during the course of a robbery.

We therefore affirm the district court's denial of habeas relief as to the special circumstances phase of Frierson's trial.

**AFFIRMED.**