Filed 3/30/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KEVIN JOSEPH SMITH,<br><br>    Defendant and Appellant. | A146648<br><br>(Solano County<br>Super. Ct. No. VCR221478) |

Kevin Joseph Smith was one of three people extracted from a vehicle involved in a single-car rollover accident. Smith's blood alcohol content (BAC) was determined to be 0.24 percent, and he was charged with driving under the influence (DUI) causing injury (Veh. Code, § 23153, subd. (a)) and driving with a BAC in excess of 0.08 percent causing injury (*id.,* § 23153, subd. (b)). As to both counts, it was alleged that Smith's BAC was in excess of 0.20 percent (*id.,* § 23538, subd. (b)(2)), he proximately caused bodily injury to two victims (*id.,* § 23558), he personally inflicted great bodily injury upon one of those victims (Pen. Code, § 12022.7, subd. (a)), and he had suffered a prior DUI conviction (Veh. Code, §§ 23560, 23566). Smith sought to introduce evidence at trial that another vehicle occupant made an extrajudicial statement against penal interest indicating she, and not Smith, was driving at the time of the accident. After an Evidence Code section 402 hearing, the trial court found the statement unreliable and declined to permit evidence of the statement to be presented to the jury. Smith was convicted on both counts and all allegations found true. He argues the court abused its discretion in excluding the third party admission. We affirm.

1

## I.  BACKGROUND AND PROCEDURAL HISTORY

Shortly after midnight on March 23, 2014, Vallejo Police Officer Jason Thompson responded to a residence in Vallejo.  He observed a gray Dodge vehicle, later determined to belong to Smith, flipped on its side with its roof resting against the front of the house.  The roof of the car was partially caved in and the front bumper was stuck to the side of the house.  Thompson observed Smith, Smith's girlfriend (Norsheequa Deocampo), and Deocampo's cousin (Charlonda Anderson) inside the vehicle laying on the door panels and in between the seats.  Smith was unconscious, pinned between the passenger seats and passenger side doors with his head toward the front of the car and his feet toward the rear.  No one was in the driver's seat.  A crowd of spectators ignored Thompson's command to move back from the vehicle, and one individual extricated Deocampo from the vehicle after smashing a window with a hammer.  Smith and Anderson were removed by fire department personnel, after cutting away the roof.

In Thompson's presence, Smith told Robert Aikman, the treating paramedic at the scene, that he had been driving the car.[1]  Smith's cousins, Michael and Marico Garman, also spoke to Thompson at the scene.  The Garman brothers told Thompson they were following Smith's car and witnessed the collision.  Thompson testified that the brothers said the car was traveling at 35–40 miles per hour and suddenly veered left and flipped onto the yard of the house.  Both said Smith was driving the car.

When examined at the hospital, Smith, Deocampo, and Anderson each smelled of alcohol, had bloodshot and watery eyes, and appeared intoxicated.  After first saying she did not know what happened or who was driving, Anderson told Thompson that Smith drove the car and she was in the front passenger seat.  Tests of blood drawn from Smith a little over two hours after the accident measured his BAC at 0.24 percent.

---

[1] Aikman had no independent recollection of Smith's statement at the time of trial, but confirmed that his incident report narrative identified Smith as the driver.  Aikman said he would have identified Smith as the driver in one of two ways—either from extrication from the driver's seat of the vehicle, or based on a statement by Smith.  Aikman did not recall which was the basis for the statement in his report.

Deocampo and Anderson both suffered cuts and abrasions from the collision. Anderson's left femur was fractured, requiring placement of a permanent rod in her leg. She was hospitalized for three to four weeks and could not walk without a walker or crutch for some time afterward. She required medications one to two months following her release from the hospital, and she continued to experience pain at the time of trial. Deocampo's medical records reflected "soft tissue type injuries."

Smith was charged by information with driving under the influence (DUI) causing injury (Veh. Code, § 23153, subd. (a)) and driving with a BAC in excess of 0.08 percent causing injury (*id.,* § 23153, subd. (b)). As to both counts, it was alleged that Smith's BAC was in excess of 0.20 percent (*id.,* § 23538, subd. (b)(2)), he proximately caused bodily injury to two victims (*id.,* § 23558), he personally inflicted great bodily injury upon one of those victims (Pen. Code, § 12022.7, subd. (a)), and he had suffered a prior DUI conviction (Veh. Code, §§ 23560, 23566).

At trial, Anderson testified that Deocampo, and not Smith, was driving at the time of the accident. Anderson said she was feeling the effects of morphine when she spoke to Thompson on the night of the collision and could not recall what she said. The Garman brothers denied telling Thompson that Smith was the driver and denied they witnessed the collision.

The defense called Smith's aunt, Angela Chambers, who testified she was at a party at Smith's grandmother's house the evening of the accident. Smith and Deocampo also attended the party. Chambers said she gave Smith's car keys to Deocampo and told her to drive him home because Smith was "far too intoxicated to be driving." Chambers said she received a telephone call about the accident and went to the scene. She saw paramedics remove Smith from the back seat of the car where she had placed him. In rebuttal, Thompson testified that Chambers would not have been able to see where Smith was extracted from within the vehicle because crime scene tape prevented spectators from entering the scene, and numerous emergency personnel were inside the perimeter blocking the spectators' view. The only available view of the car was of its undercarriage, and Smith and Anderson were extracted through the car's roof.

3

*Excluded Evidence*

Deocampo was included on both prosecution and defense pretrial witness lists. When advised that the defense expected Deocampo to testify she was the driver, the court appointed counsel to represent her.[2] Deocampo's appointed counsel advised the court that Deocampo would invoke her Fifth Amendment privilege if called to testify. The prosecution said it would not call Deocampo as a witness, but Smith's counsel stated his intention to call her and require her to assert the privilege before the jury. The court conducted a hearing outside the jury's presence, at which Deocampo refused to answer any questions. The court found "there would be no purpose in putting [Deocampo] in front of the jury and having her invoke" and stated it was exercising its discretion to not permit her to be called as a witness simply for the purpose of invoking her privilege against self-incrimination. Deocampo was excused as a witness with the agreement of both parties.

Smith's counsel then indicated his intention to call an investigator, Angela Santos, to testify regarding Deocampo's claim to have been the driver, arguing that the statement was admissible as a declaration against penal interest. The prosecution objected to the statement as unreliable and argued it should not be admitted. At an Evidence Code section 402 hearing outside of the jury's presence, the court took testimony from Santos and Justin Legasa, a firefighter/paramedic who was at the scene of the accident.

Santos testified to a December 2014 telephone conversation with Deocampo. Deocampo told Santos she had been drinking the night of the collision. After an altercation between Smith and another person at a party, Angela Chambers and Marico Garman put Smith in the back seat of his car. Deocampo got into the driver's seat, and Anderson was in the front passenger seat. Deocampo was driving the car when the collision occurred. Deocampo told Santos she "needed to do the right thing and admit what she did." Santos opined that Deocampo was forthright and seemed "contrite."

---

[2] Counsel was also appointed for Anderson.

4

Deocampo claimed she told an emergency room physician she was the driver and said she would provide her medical records to confirm this. She never did so.

Legasa testified he was dispatched to the collision scene and was assigned to treat Deocampo, who was out of the car when he arrived. Deocampo told him she was in the back seat of the car at the time of the collision and was wearing her seatbelt. Thompson was present at the outset of the hearing and confirmed that Deocampo (and Anderson) told him Smith was the driver.

The court declined to admit the extrajudicial statement, finding it was "not trustworthy or reliable" under the totality of the circumstances: "I'm not going to let in a prior inconsistent statement by a girlfriend of [Smith] who appears to be taking the blame for him without subjecting herself to cross-examination. I think that's unfair to the Prosecution."

*Verdict and Sentence*

Smith was found guilty on both counts, and all enhancement allegations were found true. He was placed on probation for a term of five years, with a condition of 365 days in county jail, and ordered to pay $22,862.54 in restitution. Smith filed a timely notice of appeal.

## II.    DISCUSSION

A trial court's decision to admit or exclude evidence is a matter committed to its discretion " 'and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Brown* (2003) 31 Cal.4th 518, 534; see *People v. Cortez* (2016) 63 Cal.4th 101, 125, fn.5 [trial court's determination of admissibility under Evid. Code, § 1230 is reviewed for abuse of discretion].)

Smith sought to admit Deocampo's hearsay statement to Santos as a declaration against interest under Evidence Code section 1230. An extrajudicial declaration against the declarant's penal interest is admissible as an exception to the hearsay rule. As relevant here, Evidence Code section 1230 provides that: "Evidence of a statement by a declarant having sufficient knowledge of the subject is not made inadmissible by the

5

hearsay rule if the declarant is unavailable as a witness and the statement, when made . . . so far subjected him to the risk of civil or criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true." " 'The proponent of such evidence must show "that the declarant is unavailable,[3] that the declaration was against the declarant's penal interest, and that the declaration was sufficiently reliable to warrant admission despite its hearsay character." ' [Citation.] 'The focus of the declaration against interest exception to the hearsay rule is the basic trustworthiness of the declaration.' " (*People v. Geier* (2007) 41 Cal.4th 555, 584, overruled on other grounds by *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305; see *People v. Gonzales* (2011) 51 Cal.4th 894, 933 ["basic trustworthiness and factual truthfulness are required" for statements admitted pursuant to Evid. Code, § 1230].)

" 'There is no litmus test for the determination of whether a statement is trustworthy and falls within the declaration against interest exception. The trial court must look to the totality of the circumstances in which the statement was made, whether the declarant spoke from personal knowledge, the possible motivation of the declarant, what was actually said by the declarant and anything else relevant to the inquiry.' " (*People v. Tran* (2013) 215 Cal.App.4th 1207, 1217.) " 'In determining whether a statement . . . is sufficiently trustworthy to be admissible, the court may take into account not just the words but the circumstances under which they were uttered, the possible motivation of the declarant, and the declarant's relationship to the defendant.' [Citation.] '[E]ven when a hearsay statement runs generally against the declarant's penal interest . . . , the statement may, in light of circumstances, lack sufficient indicia of trustworthiness to qualify for admission. . . . [¶] . . . We have recognized that, in this context, assessing trustworthiness " 'requires the court to apply to the peculiar facts of the individual case a broad and deep acquaintance with the ways human beings actually

---

[3] Both sides agree Deocampo's invocation of her privilege against self-incrimination rendered her unavailable as a witness. (See Evid. Code, § 240, subd. (a)(1).)

conduct themselves in the circumstances material under the exception.' " ' " (*People v. Geier*, *supra*, 41 Cal.4th at p. 584.)

As the trial court noted here, Deocampo is Smith's girlfriend. The statement made to the defense investigator appears more focused on exculpating Smith than implicating herself. Santos admittedly did not advise Deocampo that her statement could subject her to criminal prosecution. Once Deocampo had legal representation, she declined to make any statement. Given Deocampo's ongoing dating relationship with Smith from the time of the accident to the time of trial, she almost certainly would have been aware Smith was criminally charged as a result of the accident, yet she never came forward to police and only made the statement at issue here almost five months after the initial felony complaint was filed and nearly nine months after the accident. "The significant passage of time is a relevant circumstance to be considered when determining a statement's reliability." (*People v. Masters* (2016) 62 Cal.4th 1019, 1057.) Moreover, Deocampo's later statement was inconsistent with her prior contemporaneous statements to emergency responders that she was in the back seat of the car at the time of the collision and Smith was driving. Her claim to have made a consistent statement to hospital medical personnel remained unverified. Inconsistent statements by a declarant raise obvious questions about the credibility of a subsequent contrary assertion, and inconsistent statements are "obvious indicators" of unreliability. (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1109; see *People v. Geier*, *supra*, 41 Cal.4th at p. 585.)

Smith cites *People v. Cudjo* (1993) 6 Cal.4th 585 for the proposition that the trial court improperly relied on "discrepancies between Deocampo's statement to police and her statement to Santos to find the statement unreliable." In *Cudjo*, the Supreme Court found the trial court erroneously excluded a hearsay statement by the defendant's brother confessing to a murder during the course of a burglary and robbery. (*Id.* at pp. 599, 604, 607.) The trial court's error, however, was its focus on the credibility of the in-court witness who proposed to testify as to the brother's statement. (*Id.* at p. 610.) The trial court found the testimony of the live witness to be " 'unreliable and untrustworthy.' " (*Id.* at p. 606.) "Because the rule excluding hearsay is based on these particular

7

difficulties in assessing the credibility of statements made outside the jury's presence, the focus of the rule's several exceptions is also on the reliability of the out-of-court declaration. Thus, the various hearsay exceptions generally reflect situations in which circumstances affording some assurance of trustworthiness compensate for the absence of the oath, cross-examination, and jury observation. [Citation.] Neither the hearsay rule nor its exceptions are concerned with the credibility of witnesses who testify directly to the jury." (*Id.* at p. 608.) Although the error was ultimately found harmless, the high court concluded that "doubts about the [in-court witness'] credibility, though reasonable and legitimate, did not provide a sufficient basis to exclude his testimony." (*Id*. at p. 610.) Here, the trial court's focus was properly on the reliability of Deocampo's statement. Smith fails to demonstrate the trial court abused its discretion in finding a lack of reliability, and therefore a lack of admissibility, under the totality of circumstances.[4]

We would, in any event, find any error in excluding the Evidence Code section 1230 evidence harmless. Smith was able to present his defense through the direct testimony of Anderson and Chambers. To arrive at a guilty verdict, the jury necessarily rejected the sworn testimony of both witnesses. It is not reasonably probable that Smith would have obtained a different result from introduction of an unsworn statement,

---

[4] Smith does not acknowledge, or even address, our standard of review in his opening or reply briefs. He suggests in his opening brief, without any further discussion or development, that "[t]he erroneous exclusion of critical, corroborative defense evidence may violate both the Fifth Amendment due process right to a fair trial and the Sixth Amendment right to present a defense." A similar argument was rejected in *People v. Cudjo*: " 'As a general matter, the ordinary rules of evidence do not impermissibly infringe on the accused's [constitutional] right to present a defense. Courts retain . . . a traditional and intrinsic power to exercise discretion to control the admission of evidence in the interests of orderly procedure and the avoidance of prejudice. [Citations.] . . . [T]his principle applies perforce to evidence of third-party culpability . . . .' [Citation.] [¶] It follows, for the most part, that the mere erroneous exercise of discretion under such 'normal' rules does not implicate the federal Constitution." (*People v. Cudjo, supra*, 6 Cal.4th at p. 611; see *People v. McCurdy, supra,* 59 Cal.4th at p. 1110 ["[t]he federal Constitution . . . does not generally create a code of evidence that supersedes a state's evidentiary rules"].)

8

particularly one that would have been impeached with Deocampo's contemporaneous utterances.  (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

### III. DISPOSITION

The judgment is affirmed.


_____
BRUINIERS, J.


I CONCUR:


_____
JONES, P. J.

**SIMONS, J., Concurring.**

I agree not only with the result reached by my colleagues in the majority, but also with their analysis of governing California Supreme Court precedent. I write separately in order to critique that precedent, which I believe has created an unjustified extra "reliability" requirement to admissibility under Evidence Code section 1230,[1] the declaration against interest exception to the hearsay rule. (See, e.g., *People v. Grimes* (2016) 1 Cal.5th 698, 711 (*Grimes*) [the proponent of admission of evidence under the exception " 'must show "that the declarant is unavailable, that the declaration was against the declarant's penal interest when made *and that the declaration was sufficiently reliable to warrant admission despite its hearsay character*" ' ", emphasis added].) I concur because *Auto Equity* compels the result in the majority opinion. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Section 1230 provides that "a statement by a declarant having sufficient knowledge of the subject is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and the statement, when made, . . . so far subjected him to the risk of civil or criminal liability, . . . that a reasonable man in his position would not have made the statement unless he believed it to be true." As with every exception to the hearsay rule, this provision has a built-in assurance of reliability: The statement must be " 'truly against interest' " to be " 'sufficiently trustworthy to be admissible.' " (*People v. Geier* (2007) 41 Cal.4th 555, 584-585 (*Geier*).) However, the statute does *not* provide that in addition to determining whether the statement is truly against interest the court must engage in a separate evaluation of whether the statement is trustworthy or reliable. That task effectively substitutes the trial court for the jury as the evaluator of the hearsay declarant's credibility.

---

[1] All undesignated statutory references are to the Evidence Code.

1

In *People v. Spriggs* (1964) 60 Cal.2d 868, our Supreme Court relied on substantial academic support to apply the declaration against interest hearsay exception to penal as well as pecuniary interests. At that time, only a minority of American jurisdictions agreed. *Spriggs* concluded expanding the exception was consistent with " 'the purpose of all rules of evidence . . . to aid in arriving at the truth.' " (*Id.* at p. 874.) "[D]eclarations against pecuniary or proprietary interest are admitted because they are unlikely to be false. [Citation.] A declaration against penal interest is no less trustworthy." (*Ibid.*; see also *Grimes*, *supra*, 1 Cal.5th at p. 711 [quoting *Spriggs* and stating "the rationale underlying the exception is that 'a person's interest against being criminally implicated gives reasonable assurance of the veracity of his statement against that interest,' thereby mitigating the dangers usually associated with the admission of out-of-court statements"].) In 1965, the Evidence Code was adopted, and it followed *Spriggs* in admitting declarations against penal interest.[2]

One major concern with this hearsay exception relates to self-serving or collateral statements included in a challenged declaration. For example, if *A*, a co-participant with a defendant in a crime, told the police he and the defendant committed it, could that statement be admitted against the defendant if *A* was unavailable to testify? Or, if *A*, instead of incriminating himself and the defendant, took full responsibility and exonerated the defendant, could the defense gain admission of the statement? In *People v. Leach* (1975) 15 Cal.3d 419, 440 (*Leach*), the Supreme Court noted that our Evidence Code was "silent on the subject" of collateral assertions within declarations against interest, but went on to conclude that section 1230 is "inapplicable to evidence of any statement or portion of a statement not itself specifically disserving to the interests of the declarant." (*Id.* at p. 441; accord *People v. Duarte* (2000) 24 Cal.4th 603, 612 (*Duarte*).) Thus, under *Leach*, a co-participant's statements are only admissible to the extent they are specifically disserving to the co-participant's interests. Applying *Leach*, the Supreme

_____

[2] The Evidence Code also required that the declarant be unavailable, though *Spriggs* had not done so. (*Spriggs, supra,* 60 Cal.2d at pp. 875–876.)

Court in *Duarte* held the trial court erred in admitting against the defendant portions of a co-participant's declaration that were not specifically disserving to the declarant's interests. (*Duarte*, *supra,* 24 Cal.4th at pp. 612–613.) Furthermore, California appellate courts have frequently found inadmissible portions of co-participant statements exonerating defendants because the excluded portions were not specifically disserving. (See, e.g., *People v. Lawley* (2002) 27 Cal.4th 102, 153–154 (*Lawley*) [defendant charged with hiring *X* to murder defendant's wife; trial court properly rejected the defendant's attempt to introduce statement of *X* that Aryan Brotherhood hired *X* to kill the victim].)

The "specifically disserving" test has remained the criterion for determining if a challenged statement is "truly" against the declarant's penal interest.[3] Where a co-participant's statement to the police shifts responsibility to the defendant and away from the declarant or appears to be designed to curry favor with the authorities, it is unlikely to pass muster. "Even a hearsay statement that is facially inculpatory of the declarant may, when considered in context, *also* be exculpatory or have a net exculpatory effect." (*Duarte, supra,* 24 Cal.4th at p. 612.) The determination whether a statement is specifically disserving "necessarily depends upon a careful analysis of what was said and the totality of the circumstances." (*People v. Greenberger* (1997) 58 Cal.App.4th 298, 335.)

In *People v. Frierson* (1991) 53 Cal.3d 730, 745 (*Frierson*), the Supreme Court stated that the "focus" of the declaration against interest exception is "the basic

---

[3] In *Grimes*, *supra*, 1 Cal.5th 698, the California Supreme Court discussed the "origins and purpose" of the *Leach* rule in depth, noting that "the proper application of the *Leach* rule appears to have generated some confusion." (*Grimes*, at p. 713.) It is not necessary for purposes of this concurrence to discuss *Grimes'* teachings regarding the *Leach* rule. Although the decision arguably changes how the "specifically disserving" test is applied to collateral statements (see *Grimes*, at pp. 713–717), I do not understand *Grimes* to suggest that whether a statement was specifically disserving to the declarant's interest is no longer central to determining admissibility. (But see *Grimes*, at p. 745, conc. & dis. opn. of Cantil–Sakauye, C.J. ["The majority's expansion of the against-interest exception represents a significant and, in my view, misguided shift in our interpretation of [] section 1230."].)

trustworthiness of the declaration." But the court also clarified that where "a statement is truly against interest within the meaning of" section 1230, the statement "is sufficiently trustworthy to be admissible." (*Frierson*, at p. 745.) *Frierson* further explained that in determining admissibility under section 1230, a trial court must " 'apply to the peculiar facts of the individual case a broad and deep acquaintance with the ways human beings actually conduct themselves in the circumstances material under the exception.' " (*Ibid.*, quoting *People v. Gordon* (1990) 50 Cal.3d 1223, 1251 (*Gordon*).) In deciding if a challenged declaration is specifically disserving, courts should consider not only the actual words spoken, but to whom they were addressed, and whether the declarant was serious, joking, bragging, or seeking to curry favor. (See *Frierson*, at p. 745.) A trial court should also consider the declarant's custodial status: For example, one serving a life term in prison without the possibility of parole who takes full responsibility for a defendant's crime seems to suffer no detriment from his statement. Each of these factors focuses on the context in which the challenged declaration was uttered and helps determine if it is "truly" against interest.

*Frierson* acknowledged "the general suspicion with which the law looks upon" declarations against penal interest. (*Frierson, supra*, 53 Cal.3d at p. 746.) Indeed, in doing so the court noted that the analogous exception in the Federal Rules of Evidence expressly requires " 'corroborating circumstances' " indicating the " 'trustworthiness of the statement.' " (*Frierson*, at pp. 745–746.)[4] Although *Frierson* did *not* suggest section

---

[4] The Federal Rules of Evidence provide a hearsay exception for a statement from an unavailable declarant that "(A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and [¶] (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability." (Fed. Rules Evid., rule 804(b)(3), 28 U.S.C; see also Méndez, *Hearsay and Its Exceptions: Conforming the Evidence Code to the Federal Rules*, 37 U.S.F. L.Rev. 351, 392 (2003) [noting difference in corroboration requirement between the California Evidence Code and the Federal Rules of Evidence].) At the time *Frierson* was decided, the corroboration requirement only applied to a statement "offered

4

1230 contained any such requirement, subsequent Supreme Court cases have *added* such a requirement—in essence an overarching reliability test focusing on general credibility—without any basis in the language of section 1230.  It appears the first decision to expressly do so was *People v. Cudjo* (1993) 6 Cal.4th 585, 607, which cited only *Frierson* for the following, oft-repeated articulation of the declaration against interest exception: "A party who maintains that an out-of-court statement is admissible under this exception as a declaration against penal interest must show that the declarant is unavailable, that the declaration was against the declarant's penal interest, *and that the declaration was sufficiently reliable to warrant admission despite its hearsay character*." (Emphasis added.)  The Supreme Court then repeated the same formulation in *People v. Lucas* (1995) 12 Cal.4th 415, 462; *Duarte*, *supra*, 24 Cal.4th at pages 610–611; *Geier*, *supra*, 41 Cal.4th at page 584; *Grimes*, *supra*, 1 Cal.5th at page 711; and numerous other cases.  But, as demonstrated, *Frierson* did not articulate an overarching reliability test.  Instead, *Frierson* held that a statement that is "truly against interest . . . is sufficiently trustworthy to be admissible." (*Frierson*, at p. 745.)  The decision in *Cudjo* did not acknowledge that it added to *Frierson's* test of admissibility, much less did it attempt to demonstrate how the addition was grounded in the language of section 1230.

The overarching reliability test added by *Cudjo* and carried over into subsequent Supreme Court cases has affected the high court's analysis in this area.  *People v. Masters* (2016) 62 Cal.4th 1019, 1054–1058 (*Masters*), presents a clear example.  There, the defendant was charged with the murder of a prison guard.  (*Id.* at p. 1026.)  The trial court excluded as hearsay a statement made by another inmate (Richardson) that implied the defendant was not involved in planning the crime.  (*Id.* at p. 1054.)  The trial court rejected the applicability of the declaration against penal interest exception because at the time Richardson made the statements "he was advised they would not, and could not, be used against him."  (*Id.* at p. 1056.)  The California Supreme Court called that ruling

---

to exculpate the accused."  (Former Fed. Rules Evid., rule 804(b)(3), 28 U.S.C.; *Frierson, supra*, 53 Cal.3d at p. 746.)

"questionable," citing both federal and California precedent. (*Ibid.*) The high court then went on to conclude that even if the trial court were wrong and the statements did qualify as against Richardson's penal interest, the trial court was correct in excluding them on the basis the statements were "insufficiently trustworthy and therefore unreliable." (*Id.* at p. 1057.) The Supreme Court's analysis effectively turned the evaluation of the statements' context into a full-scale consideration of the declarant's credibility.

*Masters* noted there was a "significant passage of time" between the incident and the time the statements were made. (*Masters*, *supra*, 62 Cal.4th at p. 1057.) Although that is certainly "a relevant circumstance to be considered when determining a statement's reliability" (*ibid.*), the court did not suggest the timing of the statements was relevant to an analysis of whether they were specifically disserving to Richardson's penal interest. Instead, the timing reflected only on Richardson's overall credibility, because it meant he had "ample opportunity to learn the details from other inmates." (*Ibid.*) The court also stated that "Richardson's status as a convicted felon was another possible factor upon which the trial court could have relied upon in determining that his statements were incredible and therefore unreliable." (*Ibid.*) This is certainly a factor the trier of fact may take into account in evaluating credibility. (See § 788 ["For the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony . . . ."].) And, under section 1202, the prosecution would have been entitled to introduce evidence of the conviction to impeach the hearsay declarant if the trial court had admitted the statement.[5] But, as *Masters* implicitly recognized, this has nothing to do with deciding

_____

[5] Section 1202 provides, "Evidence of a statement or other conduct by a declarant that is inconsistent with a statement by such declarant received in evidence as hearsay evidence is not inadmissible for the purpose of attacking the credibility of the declarant though he is not given and has not had an opportunity to explain or to deny such inconsistent statement or other conduct. Any other evidence offered to attack or support the credibility of the declarant is admissible if it would have been admissible had the declarant been a witness at the hearing. For the purposes of this section, the deponent of a deposition taken in the action in which it is offered shall be deemed to be a hearsay declarant."

whether a statement is specifically disserving. Given the express language in section 1230, Richardson's conviction should not have impacted the statement's *admissibility* as a declaration against interest, but only its weight.

*Masters* is by no means the only decision by the California Supreme Court to apply an overarching reliability test. Like *Masters*, *People v. McCurdy* (2014) 59 Cal.4th 1063, 1108-1109, articulated the test *and* applied it to exclude hearsay statements exculpating the defendant, even though it was undisputed the statements were against the declarant's penal interest. The court reasoned the statements were "unreliable," in part because the declarant promptly recanted. (*Id.* at p. 1109.) In *Geier*, *supra*, 41 Cal.4th 555, the Court did the same, upholding the exclusion of a statement by the victim's wife that she killed the victim. (*Id.* at p. 585.) The court reasoned that the declarant had given three "inconsistent" statements, "rendering the reliability of any of the statements questionable." (*Id.* at p. 585.) Although other statements by a declarant inconsistent with a statement specifically disserving his or her interest should affect the weight of the hearsay (see § 1202; see also § 780, subd. (g)), such inconsistent statements should not act as a bar to admissibility. Neither *Masters* nor *McCurdy* nor *Geier* explained how excluding statements specifically disserving to a declarant's penal interest on the ground of general reliability is consistent with the language of section 1230.[6]

The overarching reliability test should be rejected. As already noted, nothing in the language of section 1230 justifies it. In this regard, the declaration against interest hearsay exception is no different than the exceptions for spontaneous declarations

---

[6] Numerous other California Supreme Court cases have recited *Cudjo's* formulation of the hearsay exception incorporating an overarching reliability test, *without* applying the test to exclude a statement specifically disserving to a declarant's penal interest. For example, in *Lawley, supra,* 27 Cal.4th at pages 153–154, the Court quoted the formulation of the exception including the reliability test, but approved the exclusion of portions of a statement offered by the defendant that were not specifically disserving to the declarant's interest. In *Duarte, supra,* 24 Cal.4th at pages 610–613, the Court recited the test but reversed the trial court's decision to admit portions of a statement incriminating the defendant that were not specifically disserving to the declarant's interest.

7

(section 1240),[7] contemporaneous declarations (section 1241),[8] and dying declarations (section 1242).[9] The assurance of trustworthiness for each is implicit in the elements of the exception, and once those elements have been established there is no overarching reliability test that may be applied to exclude otherwise admissible statements.[10] On the other hand, there are a number of hearsay exceptions that *do* have an express statutory trustworthiness requirement. With these exceptions, even after determining the other elements have been established, the trial court must assess the reliability of the hearsay declaration before admitting it. For example, section 1250 (statement of declarant's then

---

[7] Section 1240 provides, "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception."

[8] Section 1241 provides, "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Is offered to explain, qualify, or make understandable conduct of the declarant; and [¶] (b) Was made while the declarant was engaged in such conduct."

[9] Section 1242 provides, "Evidence of a statement made by a dying person respecting the cause and circumstances of his death is not made inadmissible by the hearsay rule if the statement was made upon his personal knowledge and under a sense of immediately impending death."

[10] To be clear: Section 352 may be utilized to exclude otherwise admissible hearsay, but the court may not consider the declarant's credibility when weighing probative value. (See *Vorse v. Sarasy* (1997) 53 Cal.App.4th 998, 1007–1013.) It is also worth pointing out that the spontaneous and dying declaration exceptions have been the subject of substantial academic criticism on the ground that the requirements for admission of hearsay under the exceptions provide insufficient guarantees of trustworthiness. For example, Professor Richard D. Friedman refers to the "rather bizarre logic of the dying declaration exception." (Friedman, The Elements of Evidence (3d ed., 2004) p. 332.) The reliability theory behind the spontaneous declaration exception "has been questioned on grounds that excitement, while it suspends fabrication, may also weaken the ability to perceive and report the event accurately." (Park et al., Evidence Law (3d ed., 2011) § 9.04, p. 298.) The authors further observe, there is "convincing experimental support for this criticism." (*Ibid.*) Nevertheless, the courts have not added an overarching reliability test to the admissibility requirements under those exceptions. This further demonstrates the arbitrariness of adding such a test for the admissibility of hearsay under the declaration against interest exception.

existing mental or physical state),[11] section 1251 (statement of declarant's previously existing mental or physical state),[12] section 1271 (the business records exception),[13] and section 1280 (the official records exception),[14] so provide.  Clearly the Legislature knows how to impose an overarching reliability test if it desires to do so.  (See *In re Jennings*

[11] Section 1250 provides, "(a) Subject to Section 1252, evidence of a statement of the declarant's then existing state of mind, emotion, or physical sensation (including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health) is not made inadmissible by the hearsay rule when: [¶] (1) The evidence is offered to prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when it is itself an issue in the action; or [¶] (2) The evidence is offered to prove or explain acts or conduct of the declarant. [¶] (b) This section does not make admissible evidence of a statement of memory or belief to prove the fact remembered or believed." Section 1252 provides, "Evidence of a statement is inadmissible under this article if the statement was made under circumstances such as to indicate its lack of trustworthiness." (See *People v. Riccardi* (2012) 54 Cal.4th 758, 821, overruled on another ground in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216 [describing section 1252 as a "trustworthiness requirement"].)

[12] Section 1251 provides, "Subject to Section 1252, evidence of a statement of the declarant's state of mind, emotion, or physical sensation (including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health) at a time prior to the statement is not made inadmissible by the hearsay rule if: [¶] (a) The declarant is unavailable as a witness; and [¶] (b) The evidence is offered to prove such prior state of mind, emotion, or physical sensation when it is itself an issue in the action and the evidence is not offered to prove any fact other than such state of mind, emotion, or physical sensation." (See also § 1252 [trustworthiness requirement].)

[13] Section 1271 provides, "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if: [¶] (a) The writing was made in the regular course of a business; [¶] (b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

[14] Section 1280 provides, "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered in any civil or criminal proceeding to prove the act, condition, or event if all of the following applies: [¶] (a) The writing was made by and within the scope of duty of a public employee. [¶] (b) The writing was made at or near the time of the act, condition, or event. [¶] (c) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

9

(2004) 34 Cal.4th 254, 273 [" 'It is a settled rule of statutory construction that where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes.' "].)[15]  The longstanding inclusion of an express trustworthiness requirement in the federal hearsay exception for declarations against interest further highlights the absence of a similar provision in the text of section 1230.  (See Fed. Rules Evid., rule 804(b)(3), 28 U.S.C.)

Rejection of the overarching reliability test is consistent with the Evidence Code's allocation of responsibility for evaluating the credibility of a live witness or a hearsay declarant *to the jury*.  (§ 312, subd. (b) ["Subject to the control of the court, the jury is to determine the effect and value of the evidence addressed to it, including the credibility of witnesses and hearsay declarants"].)  It may be that, in the context of this exception, the federal rule is better, or it would be better to have an express trustworthiness requirement, as is the case with many other California hearsay exceptions.  But that is not the rule prescribed by the Legislature.  In the absence of specific statutory authorization, trial courts should not expand their role from evaluating the nature of the declaration to evaluating the general credibility of the declarant.  Unless and until our Supreme Court reverses course, trial courts will continue to do so.

_____

SIMONS, J.

_____

[15] In this context, the California Supreme Court has treated the concepts of reliability and trustworthiness as interchangeable.  (See, e.g., *Cudjo*, *supra*, 6 Cal.4th at p. 607 [requiring proponent of hearsay to show statement is "sufficiently reliable to warrant admission" and then describing that showing as a "required threshold of trustworthiness"].)

10

Superior Court of Solano County, No. VCR221478, Tim P. Kam, Judge.

Beles & Beles, Robert J. Beles, Paul G. McCarthy and Manisha Daryani for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Eric D. Share and Elizabeth W. Hereford, Deputy Attorneys General, for Plaintiff and Respondent.