Filed 9/2/20  P. v. Quintero CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B300920 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA142993) |
| v. | |
| VALENTIN QUINTERO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael Shultz and Sean D. Coen, Judges. Affirmed.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Valentin Quintero appeals from a judgment entered after a jury found him guilty of possession of a firearm by a felon and two counts of attempted murder. The trial court sentenced Quintero to 12 years in state prison. He contends the trial court erred by (1) denying his requests to represent himself (*Faretta*[1] motions) at trial and at the sentencing hearing, (2) instructing the jury with CALJIC No. 3.04 [compelling another to commit crime], and (3) imposing assessments and fines at the sentencing hearing without determining his ability to pay them. We reject these arguments and affirm the judgment.

## BACKGROUND

On April 13, 2017, Quintero drove his girlfriend, Alexiz Orona, to the home of M.S. M.S. was outside her home with J.R., a family friend, and the friend's two-year-old son. M.S. and her companions were about to leave in a white Honda parked in M.S.'s driveway when Quintero blocked the driveway with his car.

Orona, who was sitting in Quintero's car, asked M.S. and J.R., "What's gonna happen? How are we gonna handle this?" Orona asked J.R. and M.S. if they wanted to handle the matter there or go to the alley behind M.S.'s house. J.R. responded that she did not want anything to happen in the child's presence. Orona indicated she did not care that a child was present because the child was not hers.

Orona turned and looked at Quintero. Then, she turned back, looked at the group, and exited the car. Orona pulled out a handgun and began firing, aiming at J.R. and M.S., who were about 13 to 14 feet away from her. As the victims attempted to

---

[1] *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

move to safety, Quintero yelled, "Finish her, finish them." Orona fired another gunshot. No one was struck by gunfire.

The following day, on August 14, 2017, Quintero and Orona were in a car with an acquaintance when a white Honda or Toyota pulled up. Orona said to Quintero, "Maybe that is the car." Quintero responded, "Shoot, mama, shoot." Orona pulled out a handgun and fired at the people in the white car. They fired back, and Orona was shot and killed.

Quintero testified at trial and presented an alibi for April 13, 2017, the date of the shooting at M.S.'s house. The prosecution presented rebuttal evidence, including cell tower evidence for Quintero's cell phone, challenging his alibi defense.

The jury found Quintero guilty of the attempted murders of M.S. and J.R. (Pen Code,[2] §§ 664 & 187, subd. (a)) and of being a felon in possession of a firearm (§ 29800, subd. (a)(1)).[3] The jury found true special allegations that, in the commission of the attempted murders, a principal personally used and personally and intentionally discharged a firearm. (§ 12022.53, subds. (b), (c) & (e)(1).) The jury found not true allegations that the shooting was for the benefit of, in association with, or at the direction of a criminal street gang.

The trial court sentenced Quintero to 12 years in state prison: the upper term of 9 years for attempted murder, plus 2 years 4 months for the other attempted murder (one-third the middle term of 7 years), plus 8 months for possession of a firearm

---

[2] Unless otherwise indicated, further statutory references are to the Penal Code.

[3] The People had also charged Quintero with the murder of Orona and shooting at an occupied vehicle. The prosecution dismissed these charges prior to trial.

by a felon (one-third the middle term of 2 years).[4]  The court also imposed certain fines and assessments.

## DISCUSSION

### I.    Denial of *Faretta* Motions

Quintero contends the trial court erred in denying *Faretta* motions he made on January 22, 2019, just before trial was scheduled to start, and on June 14, 2019, a little over a month before the sentencing hearing.  We reject the contentions.

#### A.    *Proceedings Below*

##### 1.    January 22, 2019

On Tuesday, January 22, 2019, Quintero made his first *Faretta* motion.  Just prior to Quintero making the motion, both sides had announced they were ready for trial.  After hearing and considering counsels' scheduling issues, the trial court (Judge Michael Shultz) set a hearing for Thursday, January 24, 2019, two days later, to discuss if counsel for Quintero's codefendant was going to be engaged in trial in another matter or if trial in the present matter could go forward.  Immediately after the discussion regarding scheduling, defense counsel informed the court that Quintero wanted to represent himself.  A conversation between the trial court and Quintero ensued.

The court inquired if Quintero would be ready to go to trial in two days—on Thursday, January 24, 2019—if the court granted the *Faretta* motion.  Quintero stated he would not be

---

[4] Because the jury rejected the gang enhancement allegations, the jury's firearm findings under section 12022.53 had no effect on Quintero's sentence.  (See § 12022.53, subd. (e)(1)(A).)

4

ready.  The court asked how much time he would need in order to get ready, and Quintero responded, "More than a month."  The court denied the *Faretta* motion as untimely, explaining that Quintero made the motion "on the verge of trial" in a case that was filed in April 2017.  The court added:  "The case is extremely old.  The late request at this point to represent himself is one that the court believes is dilatory, given the untimely nature and his own acknowledgement that he would need a continuance."  The court informed Quintero that he could renew his *Faretta* motion in two days, at the hearing on January 24, 2019, because "the status of the case may change by virtue of [codefendant's counsel's] calendaring schedule."  The court suggested to Quintero's counsel that he provide Quintero with a *Faretta* waiver form "so he [Quintero] has it ready to go on Thursday, depending upon what happens."  Counsel agreed.

### 2. January 24, 2019

On the morning of January 24, 2019, Quintero refused to leave jail to come to court.  The court issued an extraction order to compel his appearance and Quintero arrived in court after 4:00 p.m.  His counsel, who had been there in the morning, had since left, and Quintero's codefendant's counsel stood in for him.

Codefendant's counsel explained that Quintero was "withdrawing his request to represent himself" but wanted to make a *Marsden*[5] motion.  After reviewing with Quintero what had occurred on January 22, 2019 (as summarized above), including the court's statement that Quintero could renew his *Faretta* motion at the present hearing, the trial court asked

---

[5] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

Quintero, "Are you withdrawing your request to represent yourself?" Quintero responded, "Yes, Your Honor." The court explained to Quintero that the court could not conduct a *Marsden* hearing because Quintero's counsel was not present, and counsel was not present because Quintero had "refused to come to court." The court continued Quintero's *Marsden* motion to the next court date, February 4, 2019. On that date, the court heard and denied the *Marsden* motion.

### 3. February 6, 2019

At the outset of the February 6, 2019 hearing, Quintero's counsel informed the trial court that Quintero wanted "to exercise his *Faretta* rights." (Italics added.) The court reviewed the history of the proceedings on Quintero's January 22, 2019 *Faretta* motion, including that Quintero withdrew the motion at the hearing on February 4, 2019. Quintero confirmed that he wanted to represent himself at trial. Commenting that this was "a pretty complicated case," the court asked Quintero if he was ready to start trial that day. Quintero responded that he needed a "couple weeks" to figure out when he would be ready for trial. When pressed further by the court, Quintero conceded that even after a couple weeks, he might not know when he would be ready. Quintero's counsel and the prosecutor stated they were ready for trial that day.

The trial court denied Quintero's *Faretta* motion as untimely, stating: "The defendant has had numerous opportunities to assert his right to self-representation. And he's only made one. And that was withdrawn within 48 hours of making it." Quintero responded that the court was "being unfair" and added that this was "a confusing case" and he "need[ed] the information." The court agreed with Quintero that

6

the case was confusing and explained that that was one of the reasons the court denied the *Faretta* motion. Quintero informed the court that he made this latest request to represent himself because the court denied his *Marsden* motion. The court commented: "That's another good reason to deny your request to go pro[.] per[.] because there's an aspect of it that is equivocal. [¶] Clearly, there's evidence of your equivocality because you made the request and then withdrew it back in the end of January. So your request is denied." Quintero stated, "I refuse to work with him [counsel]." The court transferred the case to another courtroom for jury selection.

Quintero engaged in disruptive and uncooperative behavior as he continued to attempt to persuade the trial court to allow him to represent himself. He refused to change out of his jail clothes, allow the deputy to remove his handcuffs, or discuss whether he stipulated to the fact of a prior felony, explaining he would not cooperate so long as he was represented by his appointed attorney. Later the same day, in front of the panel that had been brought in for jury selection, Quintero stated twice that he would "not go[ ] further with this attorney," refused the court's and the bailiff's request that he sit down, and was escorted out of the courtroom. Later, outside the presence of the venire, the court inquired if Quintero wanted to be present for jury selection. Quintero responded that he would stay only if he could represent himself, and when the court denied his request, he left the courtroom voluntarily, and jury selection resumed.

### 4.     February 7 through May 31, 2019

On February 7, 2019, court and counsel were engaged in the second day of jury selection. The prosecutor informed the court that the People had located the family friend of M.S. who

7

had been present during the April 13, 2017 shooting incident. Defense counsel stated that he needed time to interview the witness and conduct further investigation and, on that basis, requested the court declare a mistrial. The court attempted to elicit from Quintero whether he understood his counsel's request and whether he wanted his counsel "to present evidence to help" him. Quintero told the court, "[Y]ou can do what you all want. You've done it so far," and stated that he did not "want to be represented."

A discussion among the court and counsel about Quintero's recent courtroom behavior ensued. After the court summarized the disruptive conduct that took place the preceding day, the prosecutor requested that the record reflect that Quintero had refused to come to court that morning (February 7), which necessitated an extraction order to compel his presence. The court agreed and noted that Quintero "has refused to come to court in the past and that there have been several extraction orders granted by other judges." The court ultimately granted the defense request for a mistrial and set a new trial date.

At a pretrial conference on March 18, 2019, Quintero renewed his request to represent himself. The court denied the request, explaining that Quintero's disruptive behavior had demonstrated that he could not "comply with the court proceedings when the court addressed" him.

At a pretrial hearing on April 2, 2019, Quintero made a *Marsden* motion, which the court denied. Quintero then made another *Faretta* motion, which the court denied based on his prior "behavior in court and failure to follow court instructions."

On April 18, 2019, Quintero stated that he "want[ed] to exercise [his] *Faretta* rights." (Italics added.) The court denied

8

the request based on his "behavior," his prior "outburst," and his failure to follow court protocol and rules. Quintero made similar requests on May 21, May 29, and May 31, 2019, which the court denied for the same reasons.

Jury selection began on May 31, 2019, and trial began on June 5, 2019.

### 5.    June 14, 2019

The jury returned its verdicts on June 14, 2019. The same day, during a discussion between the trial court (Judge Sean D. Coen) and counsel regarding a date for the sentencing hearing, Quintero made a *Faretta* motion. The following exchange occurred between the court and Quintero:

"[The Court:]  Now, sir, you are asking to represent yourself in this matter?

"[Quintero:]  Yes, Your Honor, so I can work on my retrial motion.

"[The Court:]  Okay. Do you wish to be heard any further in regards to that?

"[Quintero:]  No, Your Honor.

"[The Court:]  Again, sir, I'm going to deny that request at this time based upon, again, the history in this matter, the disruptive behavior, et cetera, although I would compliment you that you have done excellently here; and I appreciate that.

"[Quintero:]  All right."

The trial court set the sentencing hearing for August 20, 2019.

**B.** *Legal Standards and Analysis*

### 1. Denial of pretrial *Faretta* motion on January 22, 2019

A criminal defendant generally "has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so." (*Faretta*, *supra*, 422 U.S. at p. 807, italics omitted.) Ordinarily, a "trial court must grant a defendant's request for self-representation if three conditions are met. First, the defendant must be mentally competent, and must make his request knowingly and intelligently, having been apprised of the dangers of self-representation. [Citations.] Second, he must make his request unequivocally. [Citations.] Third, he must make his request within a reasonable time before trial." (*People v. Welch* (1999) 20 Cal.4th 701, 729 (*Welch*).)

Quintero contends his January 22, 2019 *Faretta* motion was timely, and the trial court erred in denying it as untimely. As set forth above, Quintero does not challenge on appeal the denials of any of his other *Faretta* requests, except his June 14, 2019 request to represent himself at the sentencing hearing, which we address below.

"[I]n order to invoke the constitutionally mandated unconditional right of self-representation a defendant in a criminal trial should make an unequivocal assertion of that right within a reasonable time prior to the commencement of trial." (*People v. Windham* (1977) 19 Cal.3d 121, 127–128.) A "defendant should not be allowed to misuse the *Faretta* mandate as a means to unjustifiably delay a scheduled trial or to obstruct the orderly administration of justice. For example, a defendant should not be permitted to wait until the day preceding trial before he moves to represent himself and requests a continuance

10

in order to prepare for trial without some showing of reasonable cause for the lateness of the request. In such a case the motion for self-representation is addressed to the sound discretion of the trial court which should consider relevant factors such as whether or not defense counsel has himself indicated that he is not ready for trial and needs further time for preparation." (*Id*. at p. 128, fn. 5.)

We conclude the trial court (Judge Shultz) did not err in denying Quintero's January 22, 2019 *Faretta* motion as untimely. The preliminary hearing was held, and the information filed, in May 2018. Quintero did not make a *Faretta* request until January 22, 2019, the eve of trial. On that date, both sides announced they were ready for trial. The court planned to send the matter out for trial on the next court date, January 24, 2019, so long as counsels' schedules permitted. (See *People v. Frierson* (1991) 53 Cal.3d 730, 742 (*Frierson*) [a *Faretta* motion made on September 29, 1986, when trial was scheduled for October 1, 1986, was made on the "eve of trial" and was untimely]; *People v. Clark* (1992) 3 Cal.4th 41, 99–100 [*Faretta* motion made while the case was being "continued on a day-to-day basis in the expectation that the motions would be concluded and jury selection set to begin at any time" was untimely, as it was made "in effect [on] the eve of trial"], abrogated on other grounds in *People v. Edwards* (2013) 57 Cal.4th 658, 704–705.)

In support of his claim that his January 22, 2019 *Faretta* motion was timely, Quintero cites *People v. Halvorsen* (2007) 42 Cal.4th 379, a case that is readily distinguishable. There, the defendant made his *Faretta* motion *seven months* before jury selection in the penalty phase of a capital retrial—not on the eve

11

of trial—and our Supreme Court concluded the motion was timely.  (*Id*. at p. 434.)

Because Quintero did not make his *Faretta* motion in a timely manner, the motion was "addressed to the sound discretion of the trial court."  (*Frierson*, *supra*, 53 Cal.3d at p. 742.)  In exercising such discretion, a trial court "should consider such factors such as the ' "quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion." ' "  (*Ibid*.)

The trial court did not err in denying Quintero's untimely *Faretta* motion, made on the eve of trial.  Quintero expressed no reason for his delay in bringing the motion.  Quintero's counsel was ready for trial; Quintero was not, and he needed a continuance to prepare.  This is not a simple case.  It is a multi-count attempted murder case.  The trial court did not abuse its discretion in declining to relieve counsel and allow Quintero to represent himself at this late stage in the proceedings.

### 2.    Denial of June 14, 2019 *Faretta* motion before sentencing hearing

As set forth above, on June 14, 2019, the date the verdicts were read, Quintero made a motion to represent himself at the sentencing hearing, which was scheduled for August 20, 2019.  The trial court (Judge Coen) did not deny the request as untimely.  A request for self-representation is timely when it is made after the verdict is returned and a reasonable time before the sentencing hearing commences.  (*People v. Miller*

12

(2007) 153 Cal.App.4th 1015, 1024.) Instead, the court denied the motion based on Quintero's history of disruptive courtroom behavior before other judges during pretrial proceedings.

"The right of self-representation is not a license to abuse the dignity of the courtroom." (*Faretta*, *supra*, 422 U.S. at p. 834, fn. 46.) Thus, the court may deny a defendant the right to represent himself or herself if the defendant "is disruptive in the courtroom" (*People v. Lynch* (2010) 50 Cal.4th 693, 721–722), or "is not 'able and willing to abide by rules of procedure and courtroom protocol' " (*People v. Rudd* (1998) 63 Cal.App.4th 620, 632, quoting *McKaskle v. Wiggins* (1984) 465 U.S. 168, 173; accord, *People v. Watts* (2009) 173 Cal.App.4th 621, 630).

A trial court "possesses much discretion" in deciding whether to deny a defendant's motion for self-representation based on the defendant's behavior. (*Welch*, *supra*, 20 Cal.4th at p. 735.) On review, we "accord due deference to the trial court's assessment of the defendant's motives and sincerity as well as the nature and context of his misconduct" (*People v. Carson* (2005) 35 Cal.4th 1, 12 (*Carson*)), and will not reverse the court's order unless there is " 'a strong showing of clear abuse' " of discretion (*Welch*, *supra*, 20 Cal.4th at p. 735). " 'As with all actions by a trial court within the exercise of its discretion, as long as there exists "a reasonable or even fairly debatable justification, under the law, for the action taken, such action will not be here set aside, even if, as a question of first impression, we might feel inclined to take a different view from that of the court below as to the propriety of its action." ' " (*People v. Crandell* (1988) 46 Cal.3d 833, 863, overruled on other grounds in *People v. Crayton* (2002) 28 Cal.4th 346, 364–365.)

13

Quintero has failed to show that the court abused its discretion in denying his June 14, 2019 *Faretta* motion. He points to the fact that he did not engage in any disruptive behavior during the nine-day period between the start of trial on June 5, 2019 and its conclusion on June 14, 2019. Indeed, the court expressly complimented Quintero on his "excellent[ ]" behavior during the trial. In evaluating Quintero's motion, however, the court was not limited to considering the nine days preceding Quintero's motion; it could consider "the totality of the circumstances" (*Carson, supra*, 35 Cal.4th at p. 12), including Quintero's "antecedent misconduct." (*Id*. at p. 11.)

The court expressly based its decision on Quintero's "history in this matter [and his] disruptive behavior." That history and disruptive behavior includes Quintero's multiple refusals to come to court—necessitating extraction orders and delaying court proceedings—his insistence that he would not cooperate with appointed counsel after the court denied his untimely *Faretta* motion, his "outburst" in the presence of prospective jurors that he "would not go further with this attorney," his refusals to abide by the court's direction to sit down at counsel table or cooperate with bailiffs, his voluntary absence from the courtroom during jury selection, and his refusal to engage with the court when asked about his counsel's request for additional time to conduct discovery. Such conduct was dilatory, obstructionist, and disruptive of the court's proceedings. Based on the totality of the circumstances—and notwithstanding his good behavior during trial—the court did not abuse its discretion in denying Quintero's June 14, 2019 *Faretta* motion.

14

## II.     Use of Jury Instruction CALJIC No. 3.04

Quintero contends the trial court (Judge Coen) erred in instructing the jury with CALJIC No. 3.04 [compelling another to commit crime], which states:  "A person who, by threat, menace, command or coercion, compels another to commit any crime is guilty of that crime."

Quintero's counsel objected below to the use of this instruction, arguing:  "We have no evidence in this case of anybody compelling anybody to do anything.  We certainly have evidence that Mr. Quintero may have encouraged . . . Ms. Orona to shoot[.]  [T]he words that were given on the Saturday on the first event . . . 'Finish them, finish them[,]' [t]hat has nothing to do with forcing somebody to commit a crime.  And then on the next day, it was [']shoot, baby, shoot.[']  But again, no threat involved, no compulsion involved, no command involved, but an encouragement.  And so . . . I think this [instruction] is clearly about somebody who forces someone to do another crime against their will.  And that doesn't exist on the evidence that we have before the court."

After hearing argument from the prosecutor and additional argument from Quintero's counsel, the trial court rejected Quintero's arguments, finding substantial evidence warranted use of the instruction.  The court explained it was only considering the statement Quintero made during the charged offenses ("[f]inish her, finish them") and not the statement he made during the shooting the following day ("[s]hoot, mama, shoot").

On appeal, Quintero again argues CALJIC No. 3.04 is inapplicable to the facts of this case, and the trial court erred in giving the instruction.  "It is error to give an instruction which,

15

while correctly stating a principle of law, has no application to the facts of the case." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129; *People v. Johnson* (2016) 243 Cal.App.4th 1247, 1271.)

Substantial evidence in the record demonstrates that CALJIC No. 3.04 is applicable to the facts of this case. Quintero drove Orona to the scene. Orona turned to look at Quintero before she exited Quintero's car, pulled out a handgun, and fired shots at M.S. and J.R. As M.S. and J.R. attempted to move to safety, Quintero told Orona, "Finish her, finish them." Thereafter, Orona fired another shot at M.S. and J.R. Based on this evidence, it was for the jury to determine whether Quintero issued a command which compelled Orona to attempt to murder M.S. and J.R. There was no instructional error here.

### III. Court's Failure to Determine Quintero's Ability to Pay Fines and Assessments

In sentencing Quintero, the court imposed a court facilities assessment in the amount of $90 (Gov. Code, § 70373), a $120 court operations assessment (§ 1465.8), and a restitution fine of $300 (§ 1202.4, subd. (b)(1)). The court also imposed and stayed a $300 parole revocation fine (§ 1202.45). Quintero contends that the court erred by imposing these assessments and fines without first determining his ability to pay them. He relies on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, which held that imposing fines, fees, and assessments on a defendant who is unable to pay them violates the defendant's constitutional right to due process.[6]

_____

[6] Our state Supreme Court is currently considering whether trial courts must determine a criminal defendant's ability to pay fines and assessments before imposing them. (*People v. Kopp* (2019) 38 Cal.App.5th 47, review granted on

16

Quintero did not assert this argument below or object to the imposition of the challenged assessments and fines. The People assert that he has therefore forfeited the argument on appeal. Quintero argues that the general forfeiture rule should not apply here because objecting would have been futile prior to *Dueñas*, which, he asserts, "represents a dramatic and unforeseen change in the law, excusing trial counsel's failure to object at sentencing." Courts of Appeal are currently divided on the question whether a defendant has forfeited an argument based on *Dueñas* by failing to raise it at a sentencing hearing that took place before *Dueñas* was decided. (Compare *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153–1155 [defendant forfeited issue by failing to raise below even though *Dueñas* had not then been decided] with *People v. Johnson* (2019) 35 Cal.App.5th 134, 138 [the *Dueñas* holding was not reasonably foreseeable and asserting the argument prior to that decision would have been futile].) Even if we agreed with those decisions that hold that a *Dueñas* argument would have been futile before that decision was announced, Quintero's argument fails because *Dueñas* was decided in January 2019—seven months before Quintero's sentencing hearing.

Even if we assume that Quintero's *Dueñas* argument has been preserved for appeal, we would reject it for the reasons we expressed in *People v. Caceres* (2019) 39 Cal.App.5th 917. In that case, we declined to apply *Dueñas*'s "broad holding requiring trial courts in all cases to determine a defendant's ability to pay before imposing court assessments or restitution

_____

specified issues Nov. 13, 2019, S257844; Supreme Ct. Minutes, Nov. 13, 2019, p. 1622.)

17

fines." (*Id*. at p. 928.) We explained that we did "need not decide whether *Dueñas* was correctly decided as applied to its facts, because it is evident that those facts, as *Dueñas* characterizes them," were not present in *Caceres*. (*Ibid*.) In *Dueñas*, the defendant, an unemployed, homeless mother with cerebral palsy "lost her driver's license because she was too poor to pay her juvenile citations, then continued to offend because the aggregating criminal conviction assessments and fines prevented her from recovering her license. The *Dueñas* court," we observed, "described this as 'cascading consequences' stemming from 'a series of criminal proceedings driven by, and contributing to, [a defendant's] poverty.' " (*Id*. at p. 928.)

In *Caceres*, by contrast, the defendant had committed the offense of making criminal threats, which, "on its face is not a crime either 'driven by' poverty or likely to 'contribut[e] to' that poverty such that an offender is trapped in a 'cycle of repeated violations and escalating debt.' [Citation.] A person may avoid making criminal threats regardless of his or her financial circumstances, and the imposition of $370 in fees and fines will not impede [the defendant's] ability to avoid making criminal threats in the future." (*Caceres*, *supra*, 39 Cal.App.5th at pp. 928–929.) We thus concluded that *Dueñas*'s rationale did not apply to the facts in *Caceres* and, therefore, the trial court did not violate the defendant's "due process rights by imposing the assessments and restitution fine without first ascertaining his ability to pay them." (*Caceres*, *supra*, 39 Cal.App.5th at p. 929.)

The same rationale applies here. A person may avoid the crimes Quintero committed—attempted murder and unlawful possession of firearms—"regardless of his or her financial

18

circumstances," and the imposition of the fines and assessments in this case will not impede Quintero's ability to avoid committing such crimes in the future.  (See *Caceres*, *supra*, 39 Cal.App.5th at pp. 928–929.)  We therefore reject his challenge to the imposition of fines and assessments.

## DISPOSITION

The judgment is affirmed.
NOT TO BE PUBLISHED


ROTHSCHILD, P. J.


I concur:


SINANIAN, J.*

---

* Judge of the Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

CHANEY, J., Concurring and Dissenting

I would vacate Quintero's sentence and remand the matter for resentencing based on the trial court's abuse of discretion in denying Quintero's request to represent himself at the sentencing hearing (a *Faretta*[1] motion). I would affirm the judgment in all other respects.

A defendant in a criminal trial possesses a "constitutionally mandated unconditional right to self-representation" when he or she satisfies certain conditions. (*People v. Windham* (1977) 19 Cal.3d 121, 127-128.) "First, the defendant must be mentally competent, and must make his request knowingly and intelligently, having been apprised of the dangers of self-representation. [Citations.] Second, he must make his request unequivocally. [Citations.] Third, he must make his request within a reasonable time before trial." (*People v. Welch* (1999) 20 Cal.4th 701, 729.) A request for self-representation is timely when it is made after the verdict is returned and a reasonable time before the sentencing hearing commences. (*People v. Miller* (2007) 153 Cal.App.4th 1015, 1024.)

Quintero satisfied these conditions. His June 14, 2019 request to represent himself at the sentencing hearing was timely in that he made it the day the jury returned the verdicts, and more than a month before the August 20, 2019 sentencing hearing. The request was unequivocal; this was Quintero's ninth request to represent himself in five months.[2] No one disputed

---

[1] *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

[2] The trial court properly denied as untimely Quintero's January 22, 2019 request to represent himself at trial. Quintero made the request on the "eve of trial," two days before the court planned to send the matter out for trial. (See *People v. Frierson*

Quintero's mental competence or that his numerous requests for self-representation were knowing and intelligent.

In denying the June 14, 2019 *Faretta* motion, the trial court did not question whether Quintero satisfied the above-mentioned conditions for exercise of his constitutional right to self-representation.  Instead, the court denied the motion based on Quintero's "history" of "disruptive behavior" before other judges during pretrial proceedings.  The entirety of the trial court's inquiry on the June 14, 2019 *Faretta* motion is as follows:

"[The court:]  Now, sir, you are asking to represent yourself in this matter?

"[Quintero:]  Yes, Your Honor, so I can work on my retrial motion.

"[The court:]  Okay.  Do you wish to be heard any further in regards to that?

"[Quintero:]  No, Your Honor.

"[The court:]  Again, sir, I'm going to deny that request at this time based upon, again, the history in this matter, the disruptive behavior, et cetera, although I would compliment you that you have done excellently here; and I appreciate that.

"[Quintero:]  All right."

A trial court may deny the constitutional right to self-representation in a criminal case where the defendant is unable or unwilling " 'to abide by rules of procedure and courtroom protocol.' "  (*People v. Rudd* (1998) 63 Cal.App.4th 620, 631-632.)  I recognize the trial court "possesses much discretion" in deciding whether to deny a defendant's motion for self-representation

(1991) 53 Cal.3d 730, 742 [a *Faretta* motion made on September 29, 1986, when trial was scheduled for October 1, 1986, was made on the "eve of trial" and was untimely].)

based on the defendant's "disruptive behavior." (*People v. Welch, supra*, 20 Cal.4th at p. 735.) But the exercise of that discretion requires the trial court to "undertake the task of deciding whether a defendant is *and will remain* so disruptive, obstreperous, disobedient, disrespectful or obstructionist in his or her actions or words as to preclude the exercise of the right to self-representation." (*Ibid.*, italics added.) The record does not support a conclusion that Quintero's behavior would interfere with the exercise of his constitutional right to self-representation at the sentencing hearing.

Quintero demonstrated his ability and willingness to abide by rules of procedure and courtroom protocol. The judge who denied the June 14, 2019 *Faretta* motion "compliment[ed]" Quintero on his "excellent[]" behavior in the judge's courtroom. The judge did not witness any incidents of misbehavior by Quintero during the time Quintero was before the judge (from jury selection on May 31, 2019 through the reading of the verdicts on June 14, 2019, and Quintero's *Faretta* motion immediately thereafter). Quintero's conduct consistently conformed to courtroom norms during this period.

In the same way that "mental health can be fluid" and a defendant's competency can "change over time" (*People v. Johnson* (2018) 21 Cal.App.5th 267, 277), so too a defendant's behavior. Quintero's pretrial disruptive conduct was not a valid basis for denying him the constitutional right to represent himself at the sentencing hearing unless there was reason to conclude his future behavior would preclude the exercise of his constitutional right to self-representation. In denying the June 14, 2019 *Faretta* motion, the trial court made a cursory reference to Quintero's history of disruptive behavior—conduct that

3

occurred in other courtrooms outside the presence of the judge ruling on the motion—but the court engaged in no inquiry to ascertain if there was any reason to conclude Quintero would engage in future disruptive conduct or noncompliance with rules of procedure or courtroom protocol. The record reveals no basis for such a conclusion. Pure speculation is not a sufficient basis for denial of a constitutional right.

For these reasons, I conclude the trial court abused its discretion in denying Quintero's June 14, 2019 *Faretta* motion. I would vacate Quintero's sentence and remand the matter for Quintero to have an opportunity to exercise his right to self-representation at a resentencing hearing.[3]

CHANEY, J.

---

[3] Quintero's trial counsel did not file a sentencing memorandum or present any argument on Quintero's behalf at the sentencing hearing.