Filed 3/18/21  P. v. Jones CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073814 |
| v. | (Super.Ct.No. FSB19000464) |
| MICHAEL ORLANDO JONES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  William Jefferson Powell IV, Judge.  Affirmed.

Gregory L. Cannon, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Andrew Mestman and Elizabeth M. Kuchar, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted Michael Orlando Jones of continuous sexual abuse of his girlfriend's daughter (Jane Doe). (Pen. Code, § 288.5, subd. (a).) The jury also convicted Doe's mother of misdemeanor child abuse and being an accessory after the fact to Jones's crime. (Pen. Code, §§ 32, 273a, subd. (a).) Doe's mother is not a party to this appeal.

Jones argues that the trial court prejudicially erred by excluding certain out-of-court statements by Doe's mother. In addition, he contends that trial counsel rendered ineffective assistance by failing to raise a particular argument for admissibility. We affirm.

BACKGROUND

Doe's mother started dating Jones when Doe was around five years old. Doe's mother worked the overnight shift at her job; Jones lived with them and stayed home with Doe. He molested Doe at night while her mother was at work. Doe testified that the abuse started when she was in third grade, though she was unsure about that timeframe. (She was 18 years old when she testified at trial.) Jones caressed her buttocks over her clothes "[t]oo many [times] to count," and he would sometimes stroke his penis while touching her. In one instance, he touched her genitals over her clothes. In another instance, he got on top of her and "dry hump[ed]" her. She was clothed, but he was wearing only boxer shorts, and she could feel his penis pressing against her buttocks.

Doe first disclosed the abuse to her mother when she was in sixth grade. Her mother confronted Jones, and Jones apologized to Doe. Doe and her mother went to the police station and reported Jones's abuse in August 2012. Doe did not see Jones for

several weeks after that, but then he moved back in with them. One night in February 2013, Doe awoke to feel Jones's penis on her lips. Jones started crying and asked her not to tell anyone, but Doe told her mother when her mother arrived home from work. Doe's mother told her to go sit in the car, and while Doe was there, paramedics arrived and rushed into their apartment. They carried Jones out on a stretcher. He was bleeding from his chest, and there was blood all over the kitchen floor when Doe went inside. The People played the 911 call placed by Doe's mother. In that call, Doe's mother reported that Jones had tried to commit suicide by stabbing himself in the chest. She asked someone in the background, "Why would you do this? Why would you come back to my fucking house?" Later in the call, a male in the background said, "I want to die." Doe's mother told the operator that she believed Jones had stabbed himself because she was upset with him, and "he just said he doesn't care anymore."

Doe's mother continued to date Jones after that, but he no longer lived with them. Doe's mother and Jones got engaged, and she told Doe that Doe needed to forgive Jones.

The People played Doe's April 2013 interview with a detective and her September 2013 interview with the Children's Assessment Center. In those interviews, Doe described how Jones touched her buttocks while touching his penis, got on top of her, tried to touch her "private area," and tried to put his penis in her mouth. She said that the abuse happened almost every night. She also described the incident when paramedics came to her apartment, and she thought that her mother had stabbed Jones. But her mother told her later that Jones had stabbed himself.

3

While Doe's mother chose not to testify, Jones testified in his own defense. He and Doe's mother separated three times during the course of their eight-year relationship, and the final separation occurred in 2012. They separated in 2012 because he impregnated another woman. After Doe's mother found out about the other woman, she threatened to put Jones in jail.

Jones denied ever touching Doe inappropriately. Jones testified that Doe watched television shows that he did not like, including a tabloid talk show that "describe[d] the allegations along this nature."

Jones was present in court in December 2014 when Doe's mother had the following exchange with the court:

"[Doe's mother]: Your Honor.

"THE COURT: Yes, ma'am.

"[Doe's mother]: Can I say something on the record, please?

"THE COURT: Do you want to talk to your attorney first?

"[Doe's mother]: No.

"THE COURT: All right.

"[Doe's mother]: I'd like to say that I lied to law enforcement. And I made false allegations against Mr. Jones. And I told the alleged victim to do the same. And I told her what to say to law enforcement."

Jones said that he stabbed himself because he was hurt about the false allegations against him, and he wanted to lash out. He knew that if he took the pain out on anyone other than himself, he would be sent to jail, so he stabbed himself five times in the chest.

4

DISCUSSION

Jones argues that the court violated his constitutional right to present a defense by excluding a portion of a letter that Doe's mother wrote to him. He acknowledges that the statements in the letter constituted hearsay, but he argues that they were admissible under the hearsay exceptions for declarations against interest, declarations of state of mind, and prior consistent statements. (Evid. Code, §§ 1230, 1236, 1250, 1251; unlabeled statutory citations refer to this code.) He contends that trial counsel rendered ineffective assistance by failing to raise that last theory of admissibility. We conclude that all of Jones's arguments lack merit.

I.      *Additional Background*

The court admitted the December 2014 exchange between Doe's mother and the court under the hearsay exception for declarations against interest. Jones argued that "along those lines" he wanted to use a letter that Doe's mother had written to him while she was in custody in October 2014. The portion of the letter that he was seeking to admit stated: "I was tryna' [*sic*] be evil, and it backfired. I'm sorry that I've caused so much damage. I've hurt so many people, but you and my daughter have suffered the most by my actions. . . . I wish I'd thought first, instead of getting mad and tryin' [*sic*] to get back at you."

Jones argued that the letter showed "some motivation and reason for the fabrication of the allegations against him." He contended that the letter was admissible under the state of mind exception to the hearsay rule.

5

The court ruled that the letter was too vague to be admissible as either a declaration against interest or a declaration of state of mind. The court noted that, in contrast, the December 2014 statements were very clear.

II.     *No Abuse of Discretion*

The court did not abuse its discretion by ruling that the hearsay exceptions were inapplicable to the letter. (*People v. Peoples* (2016) 62 Cal.4th 718, 745 [decision to exclude evidence is reviewed for abuse of discretion].)

An out-of-court statement "offered to prove the truth of the matter stated" is hearsay and is inadmissible unless authorized by a recognized exception. (§ 1200, subds. (a), (b).) Section 1230 sets forth the exception for declarations against interest. A hearsay statement is admissible under this exception if the declarant is unavailable and the statement, "when made, was so far contrary to the declarant's pecuniary or proprietary interest, or so far subjected [the declarant] to the risk of civil or criminal liability, . . . or created such a risk of making [the declarant] an object of hatred, ridicule, or social disgrace in the community," that a reasonable person in the declarant's position would not have made the statement unless it were true. (§ 1230.) In determining whether a statement was against the declarant's interest, "the court may take into account not just the words but the circumstances under which they were uttered, the possible motivation of the declarant, and the declarant's relationship to the defendant." (*People v. Frierson* (1991) 53 Cal.3d 730, 745.) But in any case, the declaration must be "'specifically disserving to the interests of the declarant.'" (*People v. Duarte* (2000) 24 Cal.4th 603, 612.)

6

The court properly ruled that the statements in the letter did not qualify as declarations against interest. Jones contends that the statements in the letter would have subjected Doe's mother to hatred, ridicule, or social disgrace in the community. But the letter never identifies the purportedly evil conduct for which Doe's mother was apologizing. An apology for some unidentified act was not specifically disserving to her social or penal interests. And because they did not specify what she did to cause her remorse, the statements were also irrelevant and inadmissible on that ground. (§ 350 [only relevant evidence is admissible]; *People v. Cowan* (2010) 50 Cal.4th 401, 473, fn. 25 [we review the court's ruling, not the reasoning, and affirm if the evidentiary ruling was correct on any ground].) Doe's mother could have been apologizing for any number of things having nothing to do with the charges against Jones.

For the same reasons, the court properly ruled that the letter did not fall within the exception for state of mind declarations. Section 1250 permits the admission of a hearsay statement declaring the speaker's "then existing" state of mind or emotion when offered to prove the speaker's state of mind or emotion, or when "offered to prove or explain acts or conduct" of the speaker. (§ 1250, subds. (a)(1), (2).) Similarly, section 1251 permits the admission of a hearsay statement declaring the speaker's prior state of mind or emotion when offered to prove those things. (§ 1251, subd. (b).) If offered to prove state of mind, the speaker's state of mind must "itself [be] an issue in the action" under both sections. (§§ 1250, subd. (a)(1), 1251, subd. (b).)

The declarations that Doe's mother was sorry and wished she had thought first might have been relevant if she had explained what she had done to inspire those

7

emotions. Similarly, the declaration that she had been mad might have been relevant if she had connected her anger to this case. But without any explanation to connect the declarations to the facts of this case, her state of mind was not "an issue in the action." (§§ 1250, subd. (a)(1), 1251, subd. (b).)

In any event, even if the court erred by excluding the letter under either hearsay exception, any such error was harmless. Jones argues that the error violated his constitutional right to present a defense, so we must apply the "harmless beyond a reasonable doubt" standard. (*Chapman v. California* (1967) 386 U.S. 18, 24.) But an evidentiary error violates a defendant's constitutional right to present a defense only if it amounts to a complete preclusion of a defense. (*People v. Bacon* (2010) 50 Cal.4th 1082, 1104, fn. 4.) If the court's ruling "merely rejected certain evidence concerning the defense," we ask whether it is reasonably probable that the defendant would have obtained a more favorable result absent the error. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1325.)

There is no such reasonable probability here. The jurors considered Doe's mother's statements that she lied to law enforcement and told Doe to lie, and they rejected Jones's defense that Doe was lying. To the extent that the letter offered some motive for Doe's mother to fabricate allegations—she was mad at Jones and trying to be evil—the evidence at trial already permitted a reasonable inference to that effect. Jones testified that after years together, he and Doe's mother separated in 2012 because he impregnated another woman, and Doe's mother threatened to put him in jail after she found out about the other woman. That was the same year that Doe's mother took Doe to

8

the police station to report the abuse. Defense counsel drew the connection in closing argument, telling the jurors: "We know in this case that they dated. They had fights, ups, downs, they broke up. He had another girlfriend. He says that I was threatened, I will put you in jail. Is it reasonable for someone in his position to be the victim of a false claim? Of course." He returned to that defense a little later, arguing: "[I]t's very, very difficult to prove up, to rule out that these allegations might have been false. We have [Doe's mother] saying I lied. We have evidence that he did have a girlfriend. He could have made her pregnant. She was angry. If that makes sense to you, that's reasonable doubt." The letter was thus largely cumulative of evidence already admitted at trial. The jurors found Doe to be credible when she described the abuse that she suffered. It is not reasonably probable that the vague statements of motive and remorse in the letter would have changed that result.

In sum, the court did not abuse its discretion by excluding the letter from Doe's mother, and any error was harmless.

III.     *No Ineffective Assistance of Counsel*

Jones argues that the letter from Doe's mother was also admissible as a prior consistent statement under sections 1236 and 791. He asserts that his trial counsel's failure to raise that argument constituted ineffective assistance. The argument lacks merit.

To prevail on a claim of ineffective assistance, the defendant "must show that (1) counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness under prevailing professional norms; *and* (2) counsel's deficient

9

performance subjected the defendant to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant."  (*In re Alvernaz* (1992) 2 Cal.4th 924, 936-937; see also *Strickland v. Washington* (1984) 466 U.S. 668, 688, 694.)  Counsel does not perform deficiently by failing to make a meritless argument.  (*People v. Ochoa* (1998) 19 Cal.4th 353, 432.)

Section 1236 sets forth the hearsay exception for prior consistent statements.  It states:  "Evidence of a statement previously made by a witness is not made inadmissible by the hearsay rule if the statement is consistent with [the witness's] testimony at the hearing and is offered in compliance with Section 791."  (§ 1236.)  Section 791 permits the introduction of a witness's prior consistent statement if (1) the court has admitted evidence of an inconsistent statement for the purpose of attacking the witness's credibility, or (2) "[a]n express or implied charge has been made that [the witness's] testimony at the hearing is recently fabricated or is influenced by bias or other improper motive, and the statement was made before the bias, motive for fabrication, or other improper motive is alleged to have arisen."  (§ 791, subds. (a), (b).)

Here, any argument that the letter was admissible under sections 1236 and 791 was meritless, so counsel did not perform deficiently by failing to make the argument.  First, the statements in the letter were not consistent with the December 2014 oral statements by Doe's mother.  Again, the letter did not explain why Doe's mother was apologizing or what she did that was purportedly evil.  Her December 2014 statements were entirely different in nature—she said that she had lied to law enforcement and had instructed Doe to lie.

Second, section 1236 does not apply because Doe's mother did not testify at trial. (*People v. Kopatz* (2015) 61 Cal.4th 62, 84 (*Kopatz*).) By its plain terms, the section only applies when the prior statement is consistent with the witness's testimony "at the hearing." (§ 1236.) "'[A]t the hearing'" means "the hearing at which the admissibility of [her] prior consistent statements arose," namely, the trial. (*Kopatz*, *supra*, at p. 84.) The statements made by Doe's mother in the letter could not possibly be consistent with her testimony at trial, given that she did not testify. (*Ibid.*; accord *People v. Hitchings* (1997) 59 Cal.App.4th 915, 922 (*Hitchings*).)

Third, the letter did not meet the foundational requirements for admissibility under section 791. Jones contends that there was "[a]n express or implied charge" that Doe's mother had "recently fabricated" her statements exculpating Jones or that she was "influenced by bias or other improper motive." (§ 791, subd. (b).) Jones relies on the following exchange between himself and the prosecutor at trial:

"Q And the statement that your attorney read in court that [Doe's mother] made in court, did you guys talk about that before she made the statement?

"A No.

"Q And you do realize that is a very self-serving statement that she made, right?

"A I don't understand what you mean.

"Q So if she says that she lied and she made [Doe] lie, there is no crime, she is no accessory to any crime, there is not child abuse. [¶] So that statement was completely self-serving for her; you understand that, right?"

11

The court overruled an objection to that question, and Jones answered: "If it's the truth, then how is it self-serving? It sounds to me like the truth is coming out."

It is true that the prosecutor implicitly charged Doe's mother with fabricating her statements and expressly charged her with possessing an improper motive for her statements. But section 791 also requires that the witness have made the prior consistent statement *before* the motive to fabricate or other improper motive arose. (§ 791, subd. (b).) That requirement is not met here. Doe's mother wrote the letter in October 2014 while in custody, after she and Jones were arrested in August or September 2013. By that point, she had the same motive to fabricate the self-serving statements that she had in December 2014—to avoid being punished for her role in Jones's abuse. (*Hitchings*, *supra*, 59 Cal.App.4th at p. 921 [defendant's prior consistent statements were not admissible because they occurred after his arrest, when he had a motive to fabricate them].)

In his reply brief, Jones argues for the first time that the letter was admissible under section 1202, even if Doe's mother did not testify at trial. We generally do not consider arguments raised for the first time in the reply brief absent a showing of good cause for failure to raise the issue earlier. (*People v. Newton* (2007) 155 Cal.App.4th 1000, 1005.) At any rate, the section 1202 argument fails on the merits. In relevant part, section 1202 provides that any evidence offered to support the credibility of a hearsay declarant "is admissible if it would have been admissible had the declarant been a witness" at trial. (§ 1202.) While section 1202 permits admission of evidence supporting the credibility of a hearsay declarant, it does not permit prior consistent statements to be

12

offered for their truth—it is not a hearsay exception like section 1236. (*Kopatz*, *supra*, 61 Cal.4th at p. 86 [court erred by admitting prior consistent statements of hearsay declarant "as substantive hearsay evidence" because they were admissible only to rebut the attack on the declarant's credibility].)

To the extent that Jones argues the letter should have been admitted for the limited purpose of bolstering Doe's mother's credibility, we are not persuaded. Section 1202 eliminates the requirement that Doe's mother have testified at trial—it deals with hearsay declarants and not witnesses "at the hearing"—but it otherwise imposes the same conditions for admissibility that would apply to a trial witness. As discussed, the conditions for admissibility of prior consistent statements were not met here: The letter was not truly consistent with December 2014 statements by Doe's mother, and she had a motive to fabricate her statements in the letter, just as she did in December 2014.

Finally, assuming for the sake of argument that counsel performed deficiently, we see no reasonable probability that Jones would have achieved a more favorable result absent counsel's failings. The letter added little to the other evidence at trial showing that Doe's mother had a motive to lie to law enforcement about the abuse. And as for her credibility, the letter also would have added little. The prosecutor would have attacked the letter as self-serving in the same manner that she attacked the December 2014 statements.

For all of these reasons, defense counsel did not render ineffective assistance by failing to argue that the letter was admissible as a prior consistent statement.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIALS REPORTS

                                                    MENETREZ                   
                                                                          J.



We concur:

RAMIREZ                   
                  P. J.

RAPHAEL                   
                  J.


14